## BRITTAN v. HUDSON & MANHATTAN R. CO.

District Court, S. D. New York.

March 23, 1943.

David T. Smith, of New York City, for plaintiff.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Bruce Bromley, John E. Buck, and E. Fontaine Broun, all of New York City, of counsel), for defendant.

BRIGHT, District Judge.

Defendant moves for summary judgment in this action, which is brought by employees of the defendant to recover under Section 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1069, 29 U.S.C.A. § 216(b), for unpaid overtime compensation and an additional equal amount as liquidated damages. Plaintiffs allege that during the period beginning October 24, 1938, (the date Section 7 of that Act became effective) 'and ending November 28, 1942, they had been employed by defendant for work weeks of forty-seven hours. The last mentioned section provides that no employer shall, with certain exceptions not here of interest, employ any of his employees in interstate commerce for a work week longer than forty-four hours during the first year from its effective date, forty-two hours during the second year, or forty hours thereafter, unless such employee receives compensation for his employment, in excess of the hours specified, at a rate of not less than one and one-half times the regular rate at which he is employed.

The interesting, and I believe novel, question here involved is whether or not the defendant is exempted from the provisions of Section 7 by Section 13(b) (2), 29 U.S.C.A. § 213(b) (2), which reads: "The provisions of Section 7 of this title shall not apply with respect to * * * any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act."

It appears without dispute that the defendant is an interstate common carrier, operating a line of railway between New York and New Jersey, and is subject to the provisions of Part I of the Interstate Commerce Act, 49 U.S.C.A. §§ 1–27. It has a terminal at 30–50 Church Street, New York City, where it owns and operates twin twenty-two story office buildings over its railroad terminal. Practically all of its employees are engaged either in connection with the operation of its railroad or of its terminal buildings.

Plaintiff and those in whose behalf this suit is brought are employed by defendant as elevator operators, maintenance men, watchmen and otherwise in the service, maintenance, repair and care of those parts of said buildings used for commercial purposes. None of them are employed in the operation of defendant's railroad as such. The elevators in the building which are operated by such employees do not go below the street level or to the railroad terminal beneath, and the only direct connection between the offices and stores in the buildings with the railroad concourse is the stairs leading to a ramp running from the concourse to the street. Defendant's railroad station, entirely below the ground level, consists of a concourse which has slopes or ramps to the streets. The tenants in that portion of the defendant's building above its railroad terminal are some or all engaged in interstate commerce. Plaintiffs contend, therefore that it was not intended by Congress that they should be exempted from the provisions of the Fair Labor Standards Act, in view of the fact that they are not actually engaged in the operation of a railroad.

■■ It does not seem to me that the nature of the employment of the plaintiffs is an important factor in the decision in this case. The phraseology of Section 13, in my opinion, removes that feature as a consideration here. The words used in subdivision (b) (2) are comprehensive, unambiguous and need no construction. They exempt from the provisions of Section 7 any employee whose employer is subject to the provisions of Part I of the Interstate Commerce Act. It is the engagement of the employer that determines the exemption. A comparison of the particular words so used with the balance of the section confirms me in my conclusion. Under some of the subdivisions, it is the work in which an employee is engaged which determines whether there is an exemption—(a) (1), Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed.——, decided January 18, 1943; Owin v. Liquid Carbonic Corp., D.C., 42 F.Supp. 774–777; Klotz v. Ippolito, D.C., 40 F.Supp. 422–427; Wilkinson v. Noland Co., D.C., 40 F.Supp. 1009–1012; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202–208; (a) (3) Gale v. Union Bag & Paper Co., 5 Cir., 116 F.2d

27; (a) (5) Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52; (a) (6) Bowie v. Gonzalez, 1 Cir., 117 F.2d 11–18; Calaf v. Gonzalez, 1 Cir., 127 F.2d 934; (a) (10) Gordon v. Paducah Ice Mfg. Co., D.C., 41 F.Supp. 980–988; subdivision (a) (2) apparently by its language, exempts depending in part on the nature of the employee's engagement and in part on the nature of the employer's engagement. Fleming v. Arsenal Building Corp., 2 Cir., 125 F.2d 278, affirmed 316 U.S. 517, 62 S. Ct. 1116, 86 L.Ed. 1638; Wood v. Central Sand & Gravel Co., D.C., 33 F.Supp. 40–46; White Motor Co. v. Littleton, 5 Cir., 124 F. 2d 92; Fleming v. American Stores, D.C., 42 F.Supp. 511–522; Prescription House v. Anderson, D.C., 42 F.Supp. 874-879; Duncan v. Montgomery Ward & Co., D.C., 42 F.Supp. 879-883; Lorenzetti v. American Trust Co., D.C., 45 F.Supp. 128-138. Under subdivision (b)(1) it has been held that employees are exempted where the Interstate Commerce Commission under the Motor Carriers Act, 49 U.S.C.A. § 301 et seq., has "power" to establish the qualifications and maximum hours of service of employees regardless of whether they have actually exercised the power. Richardson v. James Gibbons Co., 14 Cir., 132 F.2d 627-629.

The employees mentioned under subdivisions (a)(4), (8), (9), and (11) are exempted by the nature of their employer's business. (a)(4) is practically the same as the subdivision in question (b)(2); the exemption is made to depend upon the fact that the employment is subject to the provisions either of the common carriage by air law, 45 U.S.C.A. §§ 181–188, or to Part I of the Interstate Commerce Act. The exemption under (a)(8) is based on the size of the circulation of a newspaper, its frequency of publication, and the territory within which distributed; under (a)(9) upon the character of the business of the employer; and under (a)(11) upon the size of the telephone exchange.

It is clear to me that there are no limitations upon the exemption here in question, and certainly if Congress made none, I should not. I do not think Calaf v. Gonzalez, 1 Cir., 127 F.2d 934, cited by plaintiffs as exactly in point, is controlling. There exemption was claimed under subdivision (a)(10), which relates to the particular employment of the individual, and the court in that case held there was no exemption because the plaintiffs were employed in the transportation of sugar cane, which was not exempted, rather than as farmers in dealing with such product in its raw or natural state, which would be agriculture and exempt.

The defendant's motion will, therefore, be granted. Settle order on notice.