Jack **SMITH**, Plaintiff,

v.

John H. **HUDSON**, Jr., d/b/a **Hudson Studios**, Defendant.

Civ. A. No. 4969.

United States District Court
D. South Carolina,
Greenville Division.

Jan. 14, 1966.

Joe Robert Hooper, Greenville, S. C., for plaintiff.

Sol E. Abrams, of Abrams, Bowen & Townes, Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Action under the provisions of Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) (hereinafter referred to as the Act). Plaintiff seeks recovery of overtime pay from defendant for a period from May 1961 to September 1963, plus an amount equal to the alleged overtime due for liquidated damages and for reasonable attorney's fees to be allowed by the Court.

Plaintiff was employed from May 1961 until September 14, 1963, by defendant who operates a large photographic business which is in interstate commerce. Defendant raises no issue as to the jurisdiction of this Court.

Defendant submitted eight affirmative defenses as well as a general denial in his answer. Some of these were disposed of by pretrial motions and others were consolidated or removed at trial.

The second defense pled Section 6(a) of the Act (29 U.S.C. § 255(a)) which provides a two year statute of limitations from the date an action is filed thereunder. This action was filed May 24, 1965. Thus as a matter of statutory law, the time for which overtime pay can be recovered here is necessarily limited to that period from May 24, 1963, through September 14, 1963, an elapsed time of sixteen weeks.

The third "defense" set forth the manner by which the defendant alleges overtime pay must be computed, if owed.

The fourth, fifth and sixth defenses were abandoned by defendant and need not be considered.

The seventh defense pled Section 13(a) (1) of the Act, (29 U.S.C. § 213(a) (1),) which excludes from coverage under the Act supervisors who are employed in an executive and/or administrative capacity.

The eighth defense pled Section 7(e) of the Act, (29 U.S.C. § 207(a)) which excludes overtime pay if there is a valid employment contract which guarantees weekly wages (above the prescribed minimum hourly rates) for work up to sixty hours with overtime pay for hours worked above sixty in any given week, when the job requires a fluctuating work week. This section is not a proper defense in this instance because the evidence indicates, and the defendant agrees, there was no agreement for overtime pay for the hours above sixty worked in any given week, nor was any overtime paid for any hours worked in excess of sixty in any week. This Court finds as a matter of law and fact that the seventh defense which pled Section 7(e) of the Act as a bar is not well taken and this defense need not be considered further.

Plaintiff conceded defendant is entitled to the set-off pled in the ninth defense. This set-off is a judgment recorded in the Office of the Clerk of Court of Greenville County in favor of the defendant against plaintiff in the amount

of $988.99 plus interest at six per cent from February 12, 1965.

The issue is: Was plaintiff within the exclusion provided for supervisors within the meaning of section 13(a) (1) of the Act?

■ Section 13(a) (1) provides that if the business is a "retail" establishment, a supervisor may not lose this classification if less than forty percent of his time is devoted to activities not directly or closely related to executive or administrative activities. The evidence is that the defendant's operation was one in which the defendant set up in various stores photographers who took pictures of individuals. Later the defendant's agents showed the proofs to the customers and took their orders and then delivered these filled orders for finished photographs to the customers directly. It is clear that defendant's business is a retail establishment within the meaning of this Section of the Act. See Wideman v. Blanchard & Calhoun Realty Co., 50 F.Supp. 626 (S.D.Ga.1943); Vogelpohl v. Lane Drug Co., 55 F.Supp. 564 (N.D. Ohio 1944); Bogash v. Baltimore Cigarette Ser., 193 F.2d 291 (4th Cir. 1951); Cf. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393.

Plaintiff wrote the defendant in May of 1961 and offered to work for $100.00 per week. He stated in this letter that he was qualified to handle all phases of seventy millimeter processing. He was employed in defendant's laboratory where all the photographs taken in defendant's business were processed.

Plaintiff testified he spent a minimum of eighty percent of his time actually working in the laboratory. He testified on direct examination that he did some supervision and that during the period in question seventeen people worked in the laboratory.

On cross examination he admitted that he interviewed prospective laboratory employees and recommended whether or not they should be employed. He also recommended that certain employees be discharged and gave them their discharge notices. He received written job applications of prospective employees and gave his written "okay" over his signature, and noted hourly wage rates for those persons being hired on the applications. No other person in the laboratory had any such authority or duty.

With the exception of one other employee, the plaintiff was the only laboratory employee on "straight time" with a guaranteed weekly salary. He alone was given vacation pay. His salary was not reduced if he were absent during working hours, regardless of the duration or the reason for his absence. He had no fixed hours of employment and could come and go as he chose. He set his own working hours, a privilege given to no other laboratory employee.

He was known as the laboratory manager by the company's employees. He was referred to as the laboratory manager in the company publication, and was so designated on his payroll records. Plaintiff himself signed certain articles as the laboratory manager and had an office of sorts. He had overall responsibility for the operation of the laboratory, and the laboratory employees considered him to be the laboratory supervisor. His duties included training laboratory employees. He made up the laboratory work schedules to co-ordinate with the company's other operations, and maintained records of the hours worked by the employees in the laboratory which he kept on charts which he prepared.

There is substantial testimony that the plaintiff was employed as the laboratory supervisor and that these supervisory duties required ninety percent of his time during the period in issue. Defendant testified that plaintiff had on occasion employed individuals and set their pay rates without him knowing of these decisions until after they were final. Plaintiff had the right to determine when the people in the laboratory would report for work, how much work they would get in any given week and what their working hours would be. He admonished and corrected the laboratory workers and had complete charge. He attended super-

visory and executive meetings of the company.

Plaintiff is now operating his own photographic business which is similar to the defendant's, and he now is in direct competition with defendant.

 Considering all of the evidence in the record, this Court finds that plaintiff was a "supervisor" and was employed in an "executive capacity" within the meaning of the Act. It cannot be doubted that plaintiff had certain supervisory capacities and responsibilities. O'Meara-Sterling v. Mitchell, 299 F.2d 401, 403 (5th Cir. 1962); Wells v. Radio Corp. of America, 77 F.Supp. 964, 972 (S.D.N.Y. 1948); Richter v. Barrett, 173 F.2d 320 (3rd Cir. 1949); Bender v. Crucible Steel Co. of America, 71 F.Supp. 420, 426 (W.D.Pa.1947).

It is necessary that a determination be made as to whether plaintiff spent as much as forty percent of his time in activities which were not directly connected with his supervisory duties and responsibilities.

There is a conflict on this point. Plaintiff testified that he spent as much as eighty percent of his time on non-supervisory duties. From the number, variety, and nature of his supervisory duties and responsibilities, it appears to this Court that in order for plaintiff to have performed his duties properly, and there is no evidence in the record that the plaintiff did not properly perform his duties, it would be necessary for him to spend more than sixty percent of his time on activities which were directly related to his supervisory responsibilities and capacities. He prepared charts and kept the hours worked by the employees in the laboratory. He checked and co-ordinated their work with various company schedules. There is direct testimony that the laboratory manager's duties required full-time effort in order to be properly performed, and this Court finds as a matter of fact that the plaintiff did not spend as much as forty percent of his time in non-supervisory activities.

It is clear beyond doubt that plaintiff was a "supervisor" within the meaning of the Act, and that defendant's business is a "retail establishment" as well. Plaintiff was engaged in supervisory duties and activities which required him to spend more than sixty percent of his time in the performance of these duties and activities, and he did not spend as much as forty percent of his time in non-supervisory activities during the period not tolled by 29 U.S.C. § 255.

Therefore, defendant is entitled to Judgment and the Clerk will enter Judgment in his favor. Costs will follow Judgment.

And it is so ordered.